Formatted for Electronic Distribution                                                                          For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
March 31, 2016

_____

In re:
    Richard Rommer,                                             Chapter 7 Case
          Debtor.                                               #15-10313
_____

| Appearances: | Rebecca Rice, Esq. | Alan Bjerke, Esq. | John Canney, Esq. |
|---|---|---|---|
| | Cohen & Rice | Bauer Gravel Farnham | Law Office of John Canney |
| | Rutland, Vermont | Colchester, Vermont | Rutland, Vermont |
| | *For the Debtor* | *For Green Mountain Bureau* | *As the Case Trustee* |

**MEMORANDUM OF DECISION**
**OVERRULING OBJECTIONS TO THE DEBTOR'S HOMESTEAD EXEMPTION,**
**OVERRULING OBJECTIONS TO THE DEBTOR'S MOTION TO AVOID LIENS,**
**AND GRANTING THE DEBTOR'S MOTION TO AVOID LIENS**

      The Debtor is a farmer who owns a 3.69-acre parcel of land with three structures: his residence, a garage, and a greenhouse. He seeks to claim all of this property exempt as his homestead in this bankruptcy case, including the portion of his property – the garage and greenhouse – he leases to a corporation he owns, for operation of a wheatgrass business.

      The Debtor filed a motion to avoid certain judgment liens against his real property, claiming the liens impaired his homestead exemption. One of the judgment lien holders, Green Mountain Bureau, LLC ("GMB"), objected to the Debtor's right to avoid liens on the rented portion of the property, arguing that portion of the property did not qualify for a homestead exemption. GMB asserts, first, that the Debtor's equity in the property exceeds the amount an individual may exempt under the Vermont homestead statute, and, second, property used for commercial purposes cannot be exempt as part of the Debtor's homestead. It concludes that if the land is not exempt, the Debtor cannot avoid liens against it. The Chapter 7 Trustee also objected to the Debtor's motion, on essentially the same grounds. The Court construes these objections to the motion to avoid liens to also be objections to the Debtor's claim of a homestead exemption in the portion of the property he leases.

For the reasons set forth below, the Court finds the objections lack merit and the Debtor is entitled to exempt all of the property in question, including the garage, greenhouse, and the property on which they are located. Therefore, the Court overrules the objections to the Debtor's claim of a homestead exemption in the entire property, overrules the objections to the motion to avoid liens, and grants the Debtor's motion to avoid liens.

## JURISDICTION

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by Chief Judge Christina Reiss on June 22, 2012. The Court declares this contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), in which this Court may enter a final judgment.

## ISSUES PRESENTED

The first issue is whether the Debtor's property has equity in excess of the amount which the Debtor may exempt. The second issue is whether the Debtor's leasing of a portion of the property to a third party, and/or use of a portion of the property for a commercial purpose, extinguishes the Debtor's right to exempt that portion of property under the Vermont homestead exemption statute. The adjudication of these two issues will resolve the ultimate issue presented: whether the Debtor may avoid the judgment liens against all of his real property, under 11 U.S.C. § 522(f).[1]

## PROCEDURAL HISTORY

On July 20, 2015, the Debtor filed a motion to avoid the judicial liens of (i) Calvary Investments, LLC, (ii) GMB, (iii) Capital One Bank (USA), N.A., and (iv) Discover Bank, against the Debtor's real property located at 198 Dodge Road, Chester, VT (the "Property"), pursuant to § 522(f) (doc. # 5, the "Motion"). On August 3, 2015, GMB filed an objection to the avoidance of its lien (doc. # 8). A hearing on the Motion and GMB's objection was set for August 14, 2015, but the parties stipulated to continue the hearing to September 4, 2015 (doc. # 12).

A few days before the hearing, on September 1, 2015, GMB filed a supplemental memorandum of law (doc. # 16) in support of its objection. At the September 4th hearing, the parties presented their arguments, the Court directed the parties to file supplemental briefing, and the hearing was continued to October 9, 2015. Thereafter, the Trustee filed a memorandum of law in opposition to the Motion, the Debtor filed a memorandum of law in support of his Motion, and GMB filed a reply memorandum of law (docs. ## 20, 22, 26). Upon review of these filings, the Court entered an order sustaining the objections of the Trustee and GMB and limiting the homestead exemption to the portion of the Property not leased to the Debtor's corporation (doc. # 28). However, the Court thereafter vacated the order, sua sponte, after

---

[1] All statutory citations refer to the Title 11, U.S. Code (the "Bankruptcy Code"), unless otherwise indicated.

discovering several crucial issues the parties had not briefed and consequently the Court had not considered (doc. # 32, the "Order"). The Court determined it was necessary for the parties to examine and present arguments with regard to the impact, if any, of (1) bankruptcy court homestead exemption decisions involving debtors who, in their individual capacity, rent part of their homestead property to third parties for residential use; (2) bankruptcy court homestead decisions involving debtors who use the property for purposes that are not strictly residential; and (3) cases examining when, and under what circumstances, a court should engage in reverse piercing of a corporate veil to prevent injustice.[2]

Pursuant to the Order, the Debtor filed a memorandum of law, GMB filed a response, the Debtor filed a reply, and GMB filed a sur-reply (docs. ## 34, 35, 36, 37, 38). The Court held a hearing on the Motion and objections on December 4th, and the matter was then fully submitted.

## FACTUAL BACKGROUND

The material facts are not in dispute. The Debtor's Property is located at 198 Dodge Road, Chester, VT (docs. ## 5, 22, 34). It has three structures on it: the Debtor's residence, a detached garage that has been converted into a barn, and a greenhouse that is attached to the garage (doc. # 34). The Property is currently appraised at approximately $190,000 (doc. # 35, Ex. A, p. 5) and is encumbered by two mortgages totaling $79,547, leaving the Debtor with equity in the Property of $110,453 (docs. ## 5, 34). The appraisal assigns a value of $19,500 to the garage, and points out the garage has been converted into a barn/shed (doc. # 35, Ex. A, p. 3).

The Debtor is a farmer who grows wheat seed and salad greens (docs. ## 22, 34). He leases both the garage and the greenhouse to Green Gourmet, Inc. ("Green Gourmet"), which was incorporated in 1997 (doc. # 34, p. 2). While there is no written lease, Green Gourmet makes monthly rent payments to the Debtor "as [it] is able" (doc. # 34, p. 2). The Debtor is the sole shareholder, officer, and director of Green Gourmet; he is also its sole employee and receives a small salary (doc. # 34, p. 6). All of the Debtor's earned income is derived from the growing of crops in the greenhouse (doc. # 1, Schedule I); he grows no crops outside the greenhouse (doc. # 34, p. 1). Also located in the greenhouse is a well that is the sole source and supply of water for the Debtor's residence (doc. # 34).[3]

## DISCUSSION

The Debtor claims his entire Property, under the Vermont homestead exemption statute, including the garage and greenhouse, is exempt as his homestead. GMB and the Trustee contest this claim and

---

[2] In their memoranda of law, the parties failed to present any argument that the identity of the lessee or its relationship to the Debtor was significant, or point to any cases involving reverse corporate veil piercing that were instructive in the context of the instant facts. As a result, the Court will not address the third issue named in the Order and instead will analyze the legal import of the Debtor's land lease as if the lease were with an unrelated third party.

[3] The fact that the well is the Debtor's sole source of water and located in the greenhouse was not in the record until the December 4, 2015 hearing, when the Debtor's attorney offered that information.

3

assert the Debtor's homestead exemption should be limited to his residence and the land on which it sits.[4] In their objections, they argued: (1) given the fair market value of the Property, the Debtor has equity in the Property in excess of the amount the Debtor may exempt under the homestead exemption statute; and (2) the leasing of the garage and greenhouse to a third party for commercial use extinguishes the Debtor's right to exempt that portion of property as part of his homestead.

The Vermont homestead exemption statute provides:

> The homestead of a natural person consisting of a dwelling house, outbuildings, and the land used in connection therewith, not exceeding $125,000 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits, and products thereof, shall be exempt from attachment and execution except as hereinafter provided.

27 V.S.A. § 101. Under Vermont law, exemption statutes are remedial in nature, and ought to receive a liberal construction in favor of debtors. In re Detko, 290 B.R. 494, 499 (Bankr. D. Vt. 2003); Mercier v. Partlow, 546 A.2d 787, 789 (Vt. 1988). Any analysis of an individual's right to homestead exemption must begin with the recognition that "[t]he basic policy underlying Vermont's exemption…is to promote a 'fresh start' by allowing the debtor to keep property that the legislature deems essential to living and working." In re Parrotte, 22 F.3d 472, 474 (2d Cir. 1994); see also In re Greene, 451 B.R. 331, 337-38 (Bankr. D. Vt. 2011). The overarching purpose of Vermont's homestead exemption is to "to preserve a home for the family; to protect the family as a unit whether it consists of a husband and wife or any other natural person" and "to protect homeownership from loss to creditors." In re Evans, 51 B.R. 47, 50 (Bankr. D. Vt. 1985); Mercier v. Partlow, 546 A.2d at 788. A homestead signifies the dwelling house in which the family resides, with the usual and customary appurtenances, including outbuildings that are necessary or convenient for family use, and lands that are devoted to the same purpose. Evans, 51 B.R. 47 at 50.

Neither the Debtor nor GMB contests this is the purpose of the homestead statute (docs. ## 16, 22). However, the parties disagree on how the Court should interpret the relevant Vermont case law.

A.  THE OBJECTIONS TO THE DEBTOR'S HOMESTEAD EXEMPTION

1. *DOES THE DEBTOR'S EQUITY IN THE PROPERTY EXCEED THE MAXIMUM AMOUNT OF EXEMPTION ALLOWED UNDER 27 V.S.A. § 101?*

On June 29, 2015, the date of the Debtor's bankruptcy petition, the Debtor valued his Property in Schedule A at $150,000 (doc. # 1). In their initial responses to the Motion, GMB and the Trustee

---

[4] The Court recognizes that neither GMB nor the Trustee has filed a formal objection to the Debtor's homestead exemption of the Property. However, that is the gravamen of each argument in GMB's opposition and the Trustee's memorandum of law in response to the Motion. Consequently, the Court treats GMB's objection and the Trustee's filing as objections to the Debtor's claim of homestead exemption of the entire Property. Under Bankruptcy Rule 4003(c), GMB and the Trustee have the burden of proving the Debtor is not entitled to the claimed exemption.

contested this valuation, arguing the Debtor had presented no basis for this valuation; instead, they urged the Court to value the Property at $228,500, as assessed by the Town of Chester in 2008 (docs. ## 8, 20).[5] However, in response to GMB's objection and prior to the filing of the Trustee's memorandum of law, the Debtor obtained an appraisal of his Property dated August 14, 2015 (doc. # 35, Ex. A, p. 1). That appraisal values the Property at approximately $190,000, assigns a value of $19,500 to the garage, and describes the garage as having been converted to a barn/shed (doc. # 35, Ex. A, p. 3).

Neither GMB nor the Trustee has disputed the $190,000 valuation of the Property. Since the Property is encumbered by two mortgages totaling $79,547 (doc. # 5), the Court finds the Debtor's equity in the Property is $110,453 and less than the $125,000 amount cap under the Vermont homestead statute. Therefore, the Court overrules that component of GMB's and the Trustee's objections to the Motion asserting the Debtor's equity in the Property exceeds the amount of homestead exemption available to him.

2. *DOES THE LEASING OF THE GARAGE AND GREENHOUSE FOR COMMERCIAL USE PRECLUDE EXEMPTION OF THAT PART OF THE PROPERTY AS HOMESTEAD PROPERTY UNDER 27 V.S.A. § 101?*

Starting with the premise that the purpose of the Vermont homestead exemption is to protect an individual's home from creditors, GMB asserts the portion of the Property the Debtor uses to operate a wheatgrass business cannot be claimed exempt as homestead property. In support of its position, GMB presents a three-pronged argument. First, it asserts the garage and greenhouse are not "customary appurtenances" to a family residence because they are used for commercial purposes – and thus cannot be deemed to be used in connection with the maintenance of the Debtor's homestead (docs. ## 16, 26). Second, it interprets In re Evans, 51 B.R. 47 (Bankr. D. Vt. 1985), to hold that "the exemption [statute] does not extend to buildings on the same property as the debtor's homestead which are not the debtor's residence and are used for a commercial purpose" (doc. # 16). Third, it argues any property rented to a third party for a commercial purpose categorically cannot be claimed exempt under the homestead statute under Evans. In response, the Debtor (i) argues GMB is misconstruing the Evans case which, in any event, is distinguishable from the instant case (doc. # 22), and (ii) relies on In re Mead, 489 B.R. 363 (Bankr. D. Vt. 2013), to support his position that the Vermont homestead exemption does not deprive an individual of the right to use a portion of his homestead parcel for commercial purposes (doc. # 36, p. 1).

As the parties correctly identify, Evans and Mead are the touchstone – and most pertinent – Vermont bankruptcy cases governing the issues raised herein. The Court therefore begins its analysis by reviewing the facts and conclusions of these cases.

---

[5] In his memorandum of law (doc. # 20, ¶ 2), the Trustee acknowledges the Debtor provided an appraisal of the property valued at $190,000, but questions it since he alleges the appraisal fails to mention the greenhouse or the detached garage. This is factually incorrect as the appraisal does state the garage that has been converted to a barn/shed (doc. # 35, Ex. A, p. 3).

5

Evans was one of the first bankruptcy cases in this District to interpret the parameters of the Vermont homestead exemption; it was decided in 1985, when the Vermont homestead exemption was $30,000. In Evans, the debtors owned a single parcel of land which contained four buildings (a Colonial house, a stable barn, a storage barn, and a grist mill) situated on a lot of approximately 2.5 acres, and claimed a homestead exemption on the entire property. On the date of the petition, the debtors occupied the grist mill as their residence, used the stable and storage barns for their personal use, and rented the Colonial house to a third party. The bankruptcy court determined the fair market value of the whole property to be $90,000, and allocated $45,000 to the Colonial house and $45,000 to the gristmill premises with stable and storage barns. Since the debtors leased out the Colonial house, and notwithstanding that it was part of the same parcel on which the debtors' residence was located, this Court (Marro, J.) ruled that the Colonial house (and the $45,000 value associated with it) was not exempt because "the protection of the debtor[s'] family and the purpose of the homestead exemption statute are well served" even with limiting the exemption to the grist mill and two barns. Evans, 51 B.R. at 50.

In reaching its conclusion, the Evans court specifically determined homestead property includes not just the dwelling house but also outbuildings and lands used in connection therewith:

> [A homestead] signifies the dwelling house in which the family resides, **with the usual and customary appurtenances, including outbuildings that are necessary or convenient for family use, and lands that are devoted to the same purpose**.

Evans, 51 B.R. at 50 (emphasis added). Since the Colonial house was rented out, Judge Marro construed it as commercial property and rejected the debtors' argument that the rents collected from the tenants of the Colonial house constituted the rents, issues, profits and products of the homestead, under the statute. Id. Emphasizing that the immediately following word "thereof" in that phrase modified a "dwelling house, outbuildings, and the land used in connection therewith," Judge Marro declined to expand the meaning of "rents, issues, profits and products" to include rents received from the use of another building on land adjoining the homestead which was not used as a dwelling (and the land used in connection with it) by the debtor. Id. However, he was careful to point out that not all leased property comprising a part of the homestead would automatically fall outside the ambit of the homestead, and such lands could be considered homestead property as long as their use was not inconsistent with the underlying homestead right. Id. at 50-51. Because the Colonial house was not used in connection with the debtors' dwelling, and the purpose of the homestead exemption statute would still be upheld without exempting the Colonial house, Judge Marro determined the Colonial house should not be exempt as homestead property.

Almost three decades later, in 2013, the Mead case was decided, when the homestead exemption amount was $125,000 (as it is today). In Mead, the debtor owned two separate parcels of property and claimed both as exempt under the Vermont homestead exemption statute. The value of his interest in

6

these two parcels was substantially less than the homestead cap. One piece of land was once the site of the debtor's former marital home and a trailer, which later became the current site of a beef cattle shelter and the Debtor's only source of running water and electricity (the "Housesite"). On the other, much larger parcel of land was a primitive housing structure in which the debtor lived intermittently and sometimes rented to tenants (the "Campsite"). The debtor filed a motion to avoid a judgment lien under § 522(f), asserting the lien impaired his homestead exemption on both sites. The lien holder objected to the motion, alleging the debtor could not avoid his lien on all of the land. Like here, the lien holder and the Chapter 7 trustee also objected to the debtor's claim of a homestead exemption on a portion of the property. They argued at least one piece of the property was not the debtor's homestead because: (1) the debtor used some of the Housesite property for the commercial purpose of raising beef cattle and rented part of the Campsite, which had the sole habitable structure; and (2) the alleged homestead property consisted of two separate parcels, conveyed to him at different times by different deeds, and the Vermont homestead exemption did not permit exemption of more than one parcel of land.[6]

This Court overruled the objections both to the homestead exemption and the motion to avoid lien, and granted the debtor's motion to avoid the creditor's lien. The Court determined commercial use of property was not dispositive as to whether it constituted homestead property eligible for exemption, and the two separate parcels could, together, be claimed as a homestead under Vermont law given (i) the language of the statute providing for "land used in connection therewith," (ii) the absence of any limitation to one parcel of land in the statute, and (iii) the value of the property being less than the statutory cap.

In determining what "land [was] used in connection therewith," the Court relied on the plain language of the statute and the jurisprudence interpreting the Vermont homestead exemption, including Evans, to mean the debtor's use of the land need only be convenient, and need not be essential, to the homestead use, to qualify for exemption. Because the Housesite was "**integral to a dwelling house** as shown by the facts…**where the [d]ebtor uses the House[site] to obtain both water and electricity for the Camp[site]**," the Court found the Housesite met the convenient use test. See Mead, 489 B.R. at 370 (emphasis added). Furthermore, since neither the creditor nor the trustee proved, or even alleged, that such use was not convenient to the debtor's use of the Campsite parcel, this Court determined the debtor had established a homestead that encompassed the entire property and had the right to exempt all of it.

As to the issue of commercial use, the creditor raised a two-pronged argument, asserting the (1) the Housesite did not qualify as a homestead because it was used for the commercial purpose of raising beef cattle, and (2) the Campsite was similarly excluded because the debtor rented it to a third party. The

---

[6] The creditor and the Chapter 7 Trustee in that case raised additional arguments regarding abandonment of homestead property and the equities of the case, but they are not relevant to the issues presented in the instant case.

Mead court determined the commercial categorization of property did not automatically disqualify it from being a homestead:

> [E]ven if the [d]ebtor's cattle operation is characterized as commercial, this classification **does not** preclude the [d]ebtor from including the land used for that purpose within the homestead exemption, where the entire value of the [p]roperty is less than the applicable monetary amount. See West River Bank v. Gale, 42 Vt. 27, 32-33 (Vt. 1869) ("[T]he legislature probably did not intend to restrict the use of the homestead to the ordinary domestic purposes of housekeeping, but to give a man a place exempt from attachment … with the privilege of occupying and using it as a homestead in such manner as he shall think best calculated to enable him to support his family.").[7]

489 B.R. at 371 (emphasis added). The creditor and the Trustee did not present any proof or arguments rebutting the debtor's credible testimony that this commercial use of raising beef cattle was convenient to the Debtor's use of the Campsite. Id. at 372.

With respect to renting the Campsite to a third party, the Mead court found none of the cases the creditor cited applied and specifically distinguished the Evans case:

> [I]n Evans, the Court held the homestead exemption did not extend to additional property used solely for rental purposes, **where the debtor could already claim the full value of the homestead exemption in the property he used as his actual dwelling house**…By contrast, where a debtor rents his actual homestead, which he has not abandoned or otherwise forfeited, he would be entitled to exempt the rents generated by that property…**Thus, even assuming the weekly stipend the [third party] pays to the Debtor is rent, this fact does not control whether the Debtor may claim any portion of the Property as his homestead**.

489 B.R. at 371 (emphasis added). Thus, the Court rejected the creditor's arguments and ruled in favor of the debtor.

Evans and Mead are consistent with each other, despite what may at first blush appear to be inconsistent conclusions. The contrasting outcomes result from crucial factual distinctions. Evans dealt with a claimed homestead exemption that exceeded the statutory limit, whereas Mead did not. Evans excluded a portion of the property from exemption because its use was unrelated to the maintenance of the debtors' homestead and allowing the exemption of that portion of property would be inconsistent with the longstanding policy and purpose of the Vermont homestead statute. Mead also considered the purpose of the homestead exemption statute and gave great weight to the question of whether the use in question

---

[7] The Debtor also relies on the West River Bank case in support of its contention that he is entitled to exempt his entire Property (doc. # 36). In its sur-reply (doc. # 38), GMB asserts the Debtor cannot do so since West River Bank's interpretation of a homestead was essentially overturned by Francis McKeough's Estate v. John McKeough, 69 Vt. 34 (Vt. 1895). However, in the latter case, the subject property did not form a part of the homestead, because "the owner [received] a revenue **separate from any use immediately connected with his dwelling**." McKeough, 69 Vt. at 39 (emphasis added). As discussed in this memorandum, this is easily distinguishable from the case at hand since the Debtor's use of the garage and greenhouse is closely connected with his use of the dwelling.

8

was related to the maintenance of the homestead. In light of the facts presented, the Mead court determined both portions of the property in question were inextricably linked to the debtor's homestead, even though he occasionally rented one portion of it to a third party and regularly used one portion of it for commercial purposes. Attributing great deference to a debtor's right to a homestead exemption, the Court found those circumstances could not offset the fact that one parcel had on it the debtor's only dwelling unit and the other parcel provided him with the water and electricity he needed to maintain that dwelling.

These cases underscore the importance of conducting a fact intensive inquiry against the backdrop of the Vermont homestead exemption statute's purpose, in determining whether a piece of property may be properly exempt as a homestead. The Court turns now to examine whether the facts of the instant case warrant the granting of the Debtor's claim of a homestead in all of his real property, under the controlling jurisprudence, notwithstanding his commercial use and leasing of a portion of it.

   a. *Are the garage and greenhouse property used in connection with the homestead?*

GMB insists the crucial inquiry in determining whether the garage and greenhouse are used in connection with the dwelling house, as is essential in order for them to qualify as homestead property, is whether the removal of the garage and greenhouse would result in the loss of the Debtor's home (docs. ## 16, 35). However, this erroneously interprets "in connection with the dwelling" as limited to property ***necessary*** to family use. The definition of homestead clearly contemplates a broader scope, including land that is also ***convenient*** for family use. See Mead, 289 B.R. at 369; Evans, 51 B.R. at 50.[8] Additionally, even if this inquiry into whether the greenhouse and garage could be severed from the dwelling without reducing the value of the homestead were appropriate, GMB offers no factual support for its assertion that removal of the garage and greenhouse would not result in the loss of the Debtor's home. Moreover, the established facts in this case indicate otherwise. First and foremost, the Debtor's greenhouse contains the well that is the sole source of water for the Debtor and his dwelling. Second, the greenhouse stores all of the Debtor's crops, and all of his earned income as a farmer derives from farming operations conducted at the greenhouse. Accordingly, the Debtor's use of the greenhouse is consistent with the legislature's intent that the homestead exemption was also "to give a man a place exempt from attachment…with the privilege of occupying and using it as a homestead in such a manner as he shall think best calculated to enable him to support his family." See West River Bank, 42 Vt. at 32-33.

---

[8] See also 40 Am. Jur. 2d § 71 ("Under some homestead laws, the homestead exemption extends, not merely to a residence where a family may eat, drink, and sleep, but also to a place where the head or members may pursue such business or avocation as may be necessary for the support and comfort of the family.").

In sum, the Court finds the Debtor has demonstrated the garage and greenhouse are used in connection with the homestead and GMB has failed to meet its burden of proof to deny the Debtor an exemption in this property on that basis.[9]

   b. *Does the presence of the well in the greenhouse result in the conclusion that the greenhouse is used in connection with the homestead?*

In his latest memorandum of law (doc. # 34), the Debtor introduced the fact that his well was located in the greenhouse.[10] It is undisputed this well is his sole source of water for his residence. The Mead case specifically addressed the issue of whether a well located on a separate parcel of land constitutes a use necessary to homestead property, and the Court determined since the well was the sole source of water, it was integral to the debtor's dwelling, thus qualifying the parcel on which it was located as exempt homestead property. See 489 B.R. at 370. Further mirroring the circumstances before the Court in Mead, neither objecting party here alleges the Debtor's use of the well is not convenient – or necessary – to the use of his dwelling.

The only responses GMB or the Trustee interposed with respect to the well addressed an entirely different topic. At the December 4th hearing, GMB rejected the notion that the presence of the well should result in the greenhouse parcel qualifying as homestead property. Instead, GMB stated that if the well in the greenhouse were used for both commercial and residential purposes, then the Court could disallow the exemption and simply order the Debtor to establish a well-sharing arrangement between the dwelling and non-dwelling parcels. The Trustee agreed with GMB, pointing out that well-sharing was common in this District, and under 27 V.S.A. § 103, divisions of property were intended to occur. These arguments urging well-sharing have no support in this record and miss the point. Most importantly, they fail to take into account the Court's prior ruling in Mead and Vermont homestead jurisprudence requiring the homestead statute to be interpreted liberally in favor of the debtor, as well as the debtor's paramount right to exempt property which is necessary or convenient to his right to maintain a dwelling. See Mead, 289 B.R. at 369; In re Greene, 451 B.R. at 337-38; In re Detko, 290 B.R. at 499-500; Evans, 51 B.R. at 50.

Based upon the foregoing considerations and findings, the Court concludes the presence of the dwelling's only well in the greenhouse property makes that property convenient, if not necessary, to the Debtor's residence, and, based upon controlling law, qualifies it to be part of the homestead property.

---

[9] In further support of its position that the garage and greenhouse are not used in connection with the Debtor's maintenance of his homestead, GMB alleges farming assets are only to be protected under the Vermont exemption scheme to the extent the legislature created specific exemptions for farm-related assets (doc. # 26, ¶¶ 2-3). GMB points to the Debtor's failure to claim any of these specific exemptions in Schedule C of his petition. GMB also states the Debtor cannot use the homestead exemption to include agricultural enterprises since the Debtor has not cited any authority permitting him to do so (doc. # 26, ¶ 3). GMB has failed to substantiate this argument with any case law or statutory rationale, or to dispute the Debtor's need for the income he derives through the greenhouse-related property for his livelihood. Therefore, the Court rejects it as unavailing.

[10] The Court recognizes this crucial fact was introduced late in the party's filings; however, GMB had ample opportunity to respond and object to it, and did not do so.

c. *Does the commercial use of the garage and greenhouse disqualify them from being land used in connection with the homestead?*

GMB also argues the Debtor's commercial use of the garage and greenhouse requires a determination they are not "customary appurtenances" to the family residence or property "used in connection with his dwelling" (doc. # 16). As support, GMB places great emphasis on the following language in Evans:

> It would, indeed, be an unwarranted expansion of the real meaning of the [homestead] statute to have rents encompass money received from the use of another building on land adjoining the homestead premises which is not used as a dwelling by the debtor.

51 B.R. at 50. GMB extrapolates from this sentence that non-residential buildings used for commercial purposes are not "used in connection with the dwelling." However, this is an erroneous extrapolation because, as discussed above, Judge Marro was analyzing the meaning of the language "together with the rents, issues, profits, and products thereof" to mean only rents collected from homestead property could be exempt under the homestead statute, in contrast to rents collected from non-homestead property. "Homestead property," according to Judge Marro, was defined as the "dwelling house in which the family resides, with the usual and customary appurtenances, including outbuildings that are necessary or convenient for family use, and lands that are devoted to the same purpose." Evans, 51 B.R. at 50. GMB does not contest this definition of homestead property and even quotes this line from Evans in its objection (doc. # 16, p. 2). Consequently, GMB cannot rely on Evans to establish its claim that commercial use de facto disqualifies the garage and greenhouse from being considered customary appurtenances or land used in connection with the Debtor's homestead property. After all, as discussed above, the presence of the well in the greenhouse indisputably shows the Debtor uses the greenhouse parcel in connection with his homestead.

Instead, the more germane case to this question is Mead. Like the debtor in Mead, the Debtor here uses a part of his property (the garage and greenhouse) for a commercial purpose. However, as clearly established by Mead, the mere fact that a portion of property is used for a commercial purpose does not automatically disqualify that portion from being exempt under the homestead statute. The Debtor is a wheat seed farmer whose income depends on the wheatgrass business. Neither GMB nor the Trustee has argued this point or demonstrated such use is not convenient to the Debtor's use of his dwelling.

Therefore, the Court finds GMB's interpretation of Evans is flawed, and under Mead, GMB's argument is without merit. Therefore, the Court overrules GMB's argument that the Debtor's commercial use of a portion of the Property brings that portion of the Property outside the scope of the homestead exemption.

d. *Does renting the garage and greenhouse to a third party disqualify them from being land used in connection with the Debtor's homestead?*

The last issue GMB raises is whether the portion of the Property he rents to a third party can be included as part of his exempt homestead property (doc. # 35).

GMB urges the Court to find two cases decided by this Court, Evans and In re Ruggles, 210 B.R. 57 (Bankr. D. Vt. 1997), to be inconsistent, and to apply the rationale and holding of Evans to the facts at bar. GMB insists the rationale of Ruggles is fundamentally flawed and in conflict with 27 V.S.A. § 102.[11]

In Ruggles, the debtor claimed a homestead exemption of $50,000 ($25,000 less than the then-existing $75,000 statutory cap) in her duplex property which consisted of two units. The debtor lived in one unit and rented out the other unit to a third party. Judge Conrad determined the debtor was entitled to exempt the entire duplex, based on the following considerations: (1) the plain meaning of the exemption statute did not prohibit the debtor's claiming an exemption in a duplex; (2) the legislature's desire to exempt rents derived from homestead property was instructive; (3) the debtor and her tenants used the property for residential purposes, and the property was undivided; and (4) since the property was indivisible, any finding that the homestead did not extend to the rented portion of the duplex would force a sale of the entire complex and effectively eliminate the debtor's homestead right. See Ruggles 210 B.R. at 61.

According to GMB, Judge Conrad's rationale in Ruggles is flawed because if the consideration of whether "forcing the sale of the [property] would effectively eliminate the debtor's homestead right" were relevant, it would have the "effect of eliminating the dollar value of the exemption set forth in the statute" (doc. # 35). To illustrate this effect, GMB poses a hypothetical: "Consider the case of a Debtor who owns a house worth $500,000, with a $100,000 mortgage and no other liens. Applying Judge Conrad's rationale from Ruggles, the Debtor would receive a homestead exemption of $400,000, because the forced sale of the Debtor's home to recover the non-exempt equity would result in the Debtor losing his home" (doc. # 35).

However, as the Debtor correctly observes, GMB misconstrues the holding of that case because, contrary to what GMB's "illustration" would suggest, the debtor's equity in Ruggles was below the homestead exemption amount then in effect (doc. # 36). Additionally, § 102 only applies in limited situations, namely those where the value of the debtor's entire interest in the parcel claimed to be the homestead exceeds the applicable monetary limit. See Mead, 489 B.R. 363 at 370. That was not the case in Ruggles, or Mead, or here. Although the Ruggles ruling relied, in part, upon the fact that the duplex

---

[11] That statute states in relevant part: "When an execution is levied upon real estate of the person of which a homestead is a part or upon that part of a homestead in excess of the limitation of $125,000.00 in value, that person may designate and choose the part thereof, not exceeding the limited value, to which the exemption created in section 101 of this title shall apply."

12

was indivisible, this Court has since ruled subdivision laws are not determinative when interpreting the Vermont homestead statute. Mead, 489 B.R. at 371; Evans, 51 B.R. at 51 ("Subdivision is not crucial to the protection of the homestead exemption of the debtor.").

In analyzing whether renting some property to a third party disqualifies that property from being claimed as exempt homestead property, Judge Marro, in Evans, devoted much attention to whether denying the exemption for the rented portion of the property in that case would violate the underlying policy of the homestead exemption statute. Finding that it would not was a primary consideration in his ruling that the rented property could not be exempt. The facts in this case are easily distinguishable from those in Evans.[12] There, excluding the Colonial house from the debtors' homestead property did not affect the debtors' maintenance of their residence; the debtors were able to keep the grist mill in which they resided and the stable and storage barns for their personal use. The debtors retained all the land that was necessary or convenient for the protection of their home. The same cannot be said here, where the facts indicate the Debtor's livelihood is dependent on the use of the commercial greenhouse: the Debtor needs the greenhouse for personal use because it is his only source of water, and relies on the crops housed in the greenhouse as the source of his income as a farmer. GMB neither discusses any of these facts nor points to any facts supporting a contrary factual outcome. The Court finds GMB's argument on this point misconstrues the holding of Evans, and GMB's conclusion that renting out a portion of property to third parties automatically excludes it from exemption under the Vermont homestead statute is unsupported by controlling law.

As an alternative argument, GMB asserts the Debtor cannot rely on, and the Court should not consider, cases interpreting homestead statutes of other states, particularly New York's, since the Debtor has claimed the unique Vermont state exemption (doc. # 35). While this is generally correct, cases decided outside Vermont may inform this Court's decision-making. Many courts have considered the question of whether and how renting a portion of a debtor's homestead property affects the debtor's right to a homestead exemption. One bankruptcy court succinctly describes how this question requires courts to determine where to draw the line between solely commercial use and that which is part of the debtor's residential use:

> The difficulty, of course, is one of line drawing: when does renting out part of the property cross the line and remove that rented property from being part of real property used as the debtor's principal residence? When the space rented is not a separate dwelling unit, such that the case is one of shared residency, and when the extent of such rentals does not change the character of the property into a commercial property (as in the case of the bed and breakfast operation in In re McVay, 150 B.R. 254 (Bankr. D. Or. 1993),

---

[12] See supra p. 6.

> or a hotel as in <u>Mirulla</u>, 163 B.R. at 910), the property in its entirety should still be viewed as being used as the debtor's residence.

<u>In re Springmann</u>, 328 B.R. 251, 263 (Bankr. D.D.C. 2005).

Indeed, the Court must determine here where to draw that line, under the specific facts presented. It is well settled in Vermont that the mere fact property used as a residence is also used as a place of business does not cause the property to lose its homestead character. See <u>West River Bank</u>, 42 Vt. 27 at 32-33 (holding that the part of the premises consisting of a blacksmith shop and a water privilege was not subject to attachment because they were used for homestead purposes but "**[even] [i]f** the defendant had been a blacksmith by trade and **had used this shop in his business** … it would [not] have made any difference in respect to his right of homestead therein" **since the objective of homestead exemption is to secure not only a house to live in but the means of making a livelihood**)(emphasis added).

Other courts have considered the issue and their cases are instructive for the purpose of illustrating the various factual permutations in which this question arises. For example, in <u>In re Mirulla</u>, 163 B.R. 910 (Bankr. D.N.H. 1994), the debtor claimed his 14-room motel exempt under the homestead exemption even though he used only five rooms as his principal residence. A judgment creditor filed an objection to the debtor's exemption, and the bankruptcy court found the debtor's homestead interest was limited to the five rooms. The debtor argued he was entitled to exempt all fourteen rooms and that the nine rooms in which he did not reside were part of his homestead property since they were "necessary to the 'convenient enjoyment of the house by them as a home'." <u>Mirulla</u>, 163 B.R. at 911. The court rejected the debtor's argument, finding the debtor's situation distinct from a farm setting where the argument would indeed be viable:

> [In the case the debtor cites], the adjoining parcel was used as part of the homestead as then commonly understood for food and sustenance **as part of a working farm**. The debtor makes the argument that this is analogous to this use of the rental proceeds from the [motel], to allow him to reside in the five rooms he now occupies. This Court does not believe that analogy to be correct as the income necessary to support the debtor could be from any hotel rooms…**Unlike the use of adjoining land for the growing of crops**, pasturing of cattle, and cutting of firewood…the income from these particular rooms is not necessary to the convenient use of the five rooms in which he resides.

<u>Id.</u> (emphasis added). While not determinative, given the similarity of the language of "necessary or convenient" use of lands in connection with the homestead, the explicit application (in favor) of such language to farms, and the straightforward, logical rationale of the court, this case bolsters the Court's preceding analysis weighing in favor of overruling the objections to the Debtor's claimed exemption in his entire Property. The Debtor is a farmer. His livelihood from farming is entirely dependent on his wheatgrass operations. He grows all of his crops in the greenhouse. All of his earned income is derived

14

from crops grown in the greenhouse. Moreover, the existence of the well in the greenhouse further necessitates the Debtor's reliance on the greenhouse property since it is the sole source of water for his residence. Neither GMB nor the Trustee contests these facts.

Based upon this analysis, the Court finds the garage and greenhouse are used in connection with the Debtor's dwelling, and thus qualify as part of the Debtor's homestead property, eligible for exemption under the Vermont homestead statute.

### B. THE OBJECTIONS TO THE DEBTOR'S MOTION TO AVOID LIENS

Having found that the value of the Debtor's equity in the Property is less than $125,000 and thus within the amount eligible for exemption, and that the Debtor may exempt the entire Property as his homestead, including the greenhouse and garage portion of the parcel which he rents to Green Gourmet for commercial use, the Court turns to whether the Debtor has satisfied the statutory requirements for avoiding the lien of GMB under § 522(f). Under that statute, the Debtor must establish the lien in question is a judicial lien and that it impairs his homestead exemption. There is no dispute the GMB lien is a judicial lien. Applying the calculation set forth in the statute to the facts presented, the Debtor has established the liens set out in the Motion, including GMB's, impair his homestead exemption.[13]

The Court has considered, addressed, and overruled all of the objections the Trustee and GMB have presented in opposition to the Motion.

Therefore, the Court grants the Debtor's Motion to avoid liens (doc. # 5).

### CONCLUSION

Based upon the foregoing findings of fact, analysis of pertinent jurisprudence, and conclusions of law, the Court determines GMB and the Trustee have failed to show the Debtor is not entitled to claim all of his Property exempt as his homestead, including the garage and greenhouse, under 27 V.S.A. § 101, because (1) the Debtor's equity in the Property is less than the applicable homestead exemption amount, and (2) the garage and greenhouse, despite being rented out to a third party for commercial use, are used in connection with the Debtor's residence. The Court also determines, based upon the record presented and the preceding analysis, that the Debtor has demonstrated certain liens, including the lien of GMB, impair his homestead exemption and may be avoided.

---

[13] Following the formula set forth in § 522(f)(2)(A) for determining whether a lien impairs an exemption, the Debtor adds (i) the liens being tested for avoidance ($51,838.99), (ii) all other liens ($79,547.00), and (iii) the maximum exemption allowance in the absence of liens ($125,000.00), to arrive at the sum of $256,385.99. Then, the Debtor subtracts from this sum the value of the Property absent any liens ($190,000.00) to determine the extent of the impairment: $66,385.99. Since the extent of the impairment of the exemption, $66,385.99, exceeds the entire value of the judicial liens, $51,838.99, all judicial liens, including GMB's, are avoidable.

15

Accordingly, the Court overrules the objections asserted by GMB and the Trustee to the Debtor's claim of homestead exemption in the entire Property, overrules their objections to the Debtor's Motion to avoid liens, and grants the Debtor's Motion to avoid liens.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

Burlington, Vermont
March 31, 2016

Colleen A. Brown
United States Bankruptcy Judge

16